IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| JOHN TUAKALAU,<br><br>               Petitioner,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>               Respondent. | ORDER AND<br>MEMORANDUM DECISION<br>ON 2255 MOTION<br><br><br>**Civil Case No. 2:12-CV-46-TC**<br>Criminal Case No. 2:08-CR-431-TC |

Petitioner John Tuakalau filed a Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 (Petition). In his Petition, Mr. Tuakalau seeks to withdraw his guilty plea in case number 2:08-cr-431 (the '431 Case) on the basis that the United States breached the plea agreement by filing related charges against him in the subsequent RICO criminal case, United States v. Kamahele, 2:08-cr-758 (the RICO Case or the '758 Case), or, in the alternative, that he received ineffective assistance of counsel during plea proceedings. On January 26, 2012, the court denied Mr. Tuakalau's Petition on the basis that it was untimely.[1]

Mr. Tuakalau filed a motion to reconsider the denial. (See Motion[2], First Supporting

---

[1] See Docket No. 3 in this case.

[2] Docket No. 4 in this case.

Mem.[3], Second Supporting Mem.[4])  At the court's request, the United States filed a response addressing the following issues: (1) whether Mr. Tuakalau's Petition was timely; (2) whether there was a breach of Mr. Tuakalau's plea agreement in the '431 Case; and (3) assuming a breach or ineffective assistance of counsel, what prejudice did Mr. Tuakalau suffer, if any, in light of the United States' dismissal, with prejudice, of the RICO charge against Mr. Tuakalau.  (See U.S. Opp'n Mem.[5])

For the reasons set forth below, the court holds that Mr. Tuakalau's Petition was timely and so the court hereby reconsiders the Petition.  Nevertheless, as discussed below, Mr. Tuakalau's Petition fails on the merits, so he is not entitled to the remedy he seeks.

## FACTUAL AND PROCEDURAL BACKGROUND

On July 2, 2008, John Tuakalau was indicted in the '431 Case on sixteen counts (eight Hobbs Act Robbery counts under 18 U.S.C. § 1951(a), and eight corresponding gun charges under 18 U.S.C. § 924(c)).  If convicted on those sixteen counts, Mr. Tuakalau faced a minimum mandatory sentence of 185 years.  (See U.S.'s Mem. Opp'n at 10.[6])  On October 2, 2008, he signed his Statement in Advance of Plea in the '431 Case (the plea agreement)[7] under Federal Rule of Criminal Procedure 11(c)(1)(C) in exchange for a thirty-year sentence.  He pled guilty to five counts.  The Governmental dismissed the remaining eleven counts.  He began serving his

---

[3]Docket No. 15 in this case.

[4]Docket No. 19 in this case.

[5]Docket No. 24 in this case.

[6]Id.

[7]Docket No. 65 in '431 Case.

thirty-year sentence.

Then, on May 6, 2010, the United States filed the Second Superseding Indictment in the RICO Case (the RICO Indictment), which added Mr. Tuakalau to the list of defendants charged with racketeering and conspiracy.  Specifically, the United States charged Mr. Tuakalau in Count 1 with Racketeering – Robbery Conspiracy under RICO, 18 U.S.C. § 1962(d).  The eight Hobbs Act robberies for which he was indicted in the '431 Case served as predicate acts under Count 1 of the RICO Indictment.

On June 2, 2010, the court arraigned some of Mr. Tuakalau's co-defendants.  During that hearing, the court also appointed counsel for Mr. Tuakalau.  But Mr. Tuakalau was not at the hearing because he was incarcerated in California, where he was being treated for a serious illness.  His appointed attorney, David Shapiro, testified in an affidavit that "[o]n June 2, 2010, when I appeared in court on [Mr. Tuakalau's] behalf for the first time, I was informed that Mr. Tuakalau was in prison in California and being treated for a serious illness, and would not be transported to Utah until he was medically able to travel safely."  (Aff. of David B. Shapiro ¶ 3.[8])  (See also June 2, 2010 Minute Entry in '758 Case)[9] (noting that "John Tuakalau was not present at this time, he will be transported at a later date.").)

Here, Mr. Tuakalau has presented evidence that he did not know about the RICO Indictment until he met with Mr. Shapiro for the first time on December 14, 2010.  In his *pro se* letter to the court (the letter was received on January 27, 2012, and treated as a motion for reconsideration), he stated:

---

[8] Docket No. 15-1 in this case.

[9] Docket No. 221 in '758 Case.

3

> I was never arraigned for the RICO Indictment.  On the date June 2, 2010 the date of the arraignment I was in federal prison in Victorville, CA., with no knowledge of any indictment.  I was not [transferred] to Utah until Dec. 4, 2010 and didn't meet with my attorney until late Dec 2010 [or] early Jan 2011.  At that time I met with my attorney is when I had real knowledge of an indictment[.]

(Mot. for Reconsideration.[10])

Also, Mr. Shapiro testified in his affidavit that he spent the months between June and December 2010 familiarizing himself with the voluminous evidence in the RICO Case and doing "substantial preliminary groundwork" on Mr. Tuakalau's case.  (Shapiro Aff. ¶¶ 5, 9.)  He stated that he "went to see Mr. Tuakalau for the first time in the Davis County Jail on December 14, 2010."  (Id. ¶¶ 5-6.)  Mr. Shapiro did not provide a copy of the RICO Indictment to Mr. Tuakalau or communicate with Mr. Tuakalau regarding the specifics of the charges filed before that day.  (Id. ¶¶ 7, 9.)  At their first meeting, they "discussed the essence of the [RICO Indictment], and discussed that the prior charges for which he was serving his current commitment were the predicate offenses underlying his RICO charge at that time."  (Id. ¶ 8.)

On August 9, 2011, Viliami Loumoli, Mr. Tuakalau's co-defendant in the RICO Case, filed a *pro se* motion to withdraw his guilty plea in the '431 Case.  Mr. Loumoli was a co-defendant of Tuakalau in the '431 Case as well and faced similar circumstances.  On August 18, 2011, Mr. Tuakalau joined in Loumoli's motion to withdraw his guilty plea in the '431 Case.

While the court was considering the motions of Mr. Tuakalau and Mr. Loumoli, on November 18, 2011, the United States dismissed charges against Mr. Tuakalau without prejudice.  The court held a status conference on December 1, 2011, at which the court

---

[10]Docket No. 4 in this case.

recommended that Mr. Loumoli and Mr. Tuakalau re-file their motions as motions under 28 U.S.C. § 2255. (See Dec. 1, 2011 Minute Entry in '758 Case.)[11] On December 5, 2011, the court issued a follow-up order reiterating its recommendation.[12]

On January 13, 2012, Mr. Tuakalau's Petition was officially docketed with the court. On January 26, 2012, the court denied Mr. Tuakalau's Petition as untimely. The court rested its decision on a finding that Mr. Tuakalau could have discovered the facts supporting his Petition on the day he was appointed counsel (i.e., June 2, 2010).

On February 1, 2012, Mr. Tuakalau sent the court a *pro se* request for reconsideration of the order, notifying the court that he was not present at the arraignment hearing and that he did not know of the indictment until he met with Mr. Shapiro in December 2010. (See Mot. for Reconsideration.) After counsel was appointed for Mr. Tuakalau in the 2255 matter, Mr. Tuakalau (through counsel) filed a May 3, 2012 memorandum supporting his motion for reconsideration.

On May 17, 2012, during another status conference, the court granted the United States's oral motion to dismiss the RICO Case charges against Mr. Tuakalau with prejudice. (See May 17, 2012 Minute Entry in '758 Case.)[13] The court followed up its bench ruling with a written order. (See June 5, 2012 Order in '758 Case.)[14]

But even after the dismissal with prejudice, Mr. Tuakalau told the court that he wished to

---

[11]Docket No. 1230 in '758 Case.

[12]Docket No. 260 in '431 Case; Docket No. 1222 in '758 Case.

[13]Docket No. 1443 in '758 Case.

[14]Docket No. 1444 in '758 Case.

5

proceed with his Petition. Accordingly, the court ordered the United States to respond to Mr. Tuakalau's Petition.

Given the record already before the court and the relevant case law, the court finds that no evidentiary hearing is required and the issues are ripe for decision.

## ANALYSIS

**Procedural Bar – Timeliness**

Based on the doctrine of equitable tolling, Mr. Tuakalau's 2255 Petition is timely. Section 2255 imposes a one-year statute of limitations on motions to vacate, set aside, or correct a sentence. For Mr. Tuakalau, the limitation period began to run on the date "the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(f).[15]

The court previously held that the statute of limitations began running for Mr. Tuakalau on June 2, 2010, the date the court appointed Mr. Tuakalau an attorney to represent him on charges in the Second Superseding Indictment of the RICO Case (the "RICO Indictment"). (See Am. Order at 4.[16]) As noted above, on that date, Mr. Tuakalau was not at the hearing but the court appointed David Shapiro as Mr. Tuakalau's trial attorney.

Because Mr. Tuakalau did not meet with Mr. Shapiro until December 14, 2010, and based

---

[15] The other possible date from which to measure the one-year period was the date on which his judgment became final: February 16, 2009. See 28 U.S.C. § 2255(f)(1). But that date was the earlier of the two, so the court may not rely on it. See id. (requiring one-year limitation period to "run from the latest of" a list of dates). In other words, the RICO Indictment was not filed until May 6, 2010, which would be the absolute earliest date from which the court could measure the running of the limitations period.

[16] Docket No. 3 in this case.

on his trial attorney's description of communications between him and Mr. Tuakalau, the court finds that it was on December 14, 2010, that "the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(f). Before then, Mr. Tuakalau was incarcerated in California and was so ill that he could not be transported. It would be unreasonable to expect that he could have discovered the facts supporting his 2255 claim before he was well enough to meet with his attorney that December.

Nevertheless, the statute of limitations expired on December 14, 2011, approximately one month before Mr. Tuakalau officially filed his Petition on January 13, 2012. (See Petition.) Normally, Mr. Tuakalau would be barred from bringing his Petition.

But equitable tolling of the statute saves him. In August 2011, well within the statute of limitations time period, he joined his co-defendant's motion to withdraw his guilty plea in the '431 Case. (See Mot. for Joinder in '431 Case.)[17] In that motion, he essentially raised the very same claims he raises in his Petition. (Compare Loumoli *pro se* "motion" in '431 Case[18] and Loumoli Mot. to Withdraw Plea And/Or Mot. to Dismiss in '431 Case[19] (in which Mr. Tuakalau joined) with Tuakalau's Petition.) At that point, the court and the United States were well aware of Mr. Tuakalau's complaint. Indeed, on December 1, 2011, the court, for procedural reasons, recommended that Mr. Tuakalau re-file his motion under 28 U.S.C. § 2255. (See Dec. 1, 2011

---

[17]Docket No. 250 in '431 Case.

[18]Docket No. 243 in '431 Case.

[19]Docket No. 245 in '431 Case.

Minute Entry in '758 Case;[20] Dec. 5, 2011 Order in '431 Case.[21]) See also Fed. R. Crim. P. 11(e) ("After the court imposes sentence, the defendant may not withdraw a plea of guilty or nolo contendere, and the plea may be set aside only on direct appeal or collateral attack.").

The court finds that Mr. Tuakalau brought his § 2255 claim in August 2011 but did so under an incorrectly styled pleading. This is a valid reason to equitably toll the running of the one-year statute of limitations. See United States v. Gabaldon, 522 F.3d 1121, 1124 (10th Cir. 2008) (noting that equitable tolling would be appropriate "when a prisoner actively pursues judicial remedies but files a defective pleading during the statutory period") (quoting Gibson v. Klinger, 232 F.3d 799, 808 (10th Cir. 2000)); Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 n.3 (1990) (citing American Pipe & Constr. Co. v. Utah, 414 U.S. 538 (1974) for proposition that plaintiff's timely filing of defective class action tolled the limitations period for the individual claimants). The court concludes that Mr. Tuakalau's Petition was timely and, consequently, the merits of Mr. Tuakalau's claims must be addressed.

The end result, however, is the same. As discussed below, Mr. Tuakalau's Petition fails on the merits and must be denied.

**The Merits**

Mr. Tuakalau lists two grounds in support of his Petition: (1) ineffective assistance of counsel; and (2) the Government's breach of the plea agreement.[22] He originally asked for one of

---

[20]Docket No. 1230 in '758 Case.

[21]Docket No. 260 in '431 Case.

[22]To the extent Mr. Tuakalau contends that he was denied the finality that is protected by the Double Jeopardy Clause (that is, when the Government brought the RICO charges against him after he had already pleaded guilty to many of the predicate acts listed in the RICO

8

two remedies: (1) dismissal of the charges against him in the RICO Case; or (2) the chance to withdraw his guilty plea and take the case '431 Case to a jury. But the charges in the RICO Indictment have since been dismissed with prejudice. So now Mr. Tuakalau only asks the court to set aside his guilty plea and provide him "the opportunity to defend against the charges in the original indictment" in the '431 Case. He requests this remedy even though he attained the other remedy sought (dismissal of the RICO charges with prejudice). Mr. Tuakalau reasons that he must continue litigating his Petition because dismissal of the RICO charges did not cure the prejudice he suffered when the RICO Indictment was issued. Upon questioning by the court as to the prejudice he believes has not been cured, Mr. Tuakalau, in a pleading, pointed to "the dangers Tuakalau faces upon returning to federal prison [after] the complete dismissal of the RICO case, and the stress, trauma and notoriety resulting from the RICO prosecution." (Reply Mem. at 20.[23])

     For the reasons set forth below, the court finds that this is not the type of prejudice that 28 U.S.C. § 2255 was designed to address. Consequently, even if Mr. Tuakalau's claims of

---

Indictment), such an argument fails as a matter of law. It is well established that a "RICO conviction and sentence [can] be based upon a predicate crime for which the defendant has already been punished." United States v. Hampton, 786 F.2d 977, 980 (10th Cir. 1986); see also United States v. Deshaw, 974 F.2d 667, 671 (5th Cir. 1992) ("We have long held that the government may first prosecute a defendant for the predicate acts which form the basis of a RICO charge . . . and subsequently prosecute him for a substantive violation of RICO."); United States v. Levasseur, 847 F.2d 786, 800 (1st Cir. 1988) ("[T]he great majority of courts which have considered the issue have held that the Double Jeopardy clause does not prohibit simultaneous but separate—or even consecutive—indictments for a substantive crime and also for RICO."); United States v. Grayson, 795 F.2d 278, 283 (3d Cir. 1986) ("Clearly a RICO offense may be based in part upon a predicate offense for which the defendant has already been convicted and served a sentence. Hence, successive prosecutions for a RICO offense and its underlying predicate offenses are not inconsistent with the double jeopardy clause."). Mr. Tuakalau was charged in the RICO Indictment with conspiracy under RICO. That is a different crime than any of the crimes charged in the '431 Case.

     [23]Docket No. 25 in this case.

ineffective assistance of counsel and breach of the plea agreement have merit (they do not, as discussed below), he has not suffered prejudice curable by § 2255.

### Ineffective Assistance of Counsel During Pleading Stage in '431 Case

Claims of ineffective assistance of counsel in the plea bargain context are governed by the two-part test set forth in Strickland v. Washington, 466 U.S. 668 (1984). Hill v. Lockhart, 474 U.S. 52, 58-59 (1985). Strickland requires a defendant to prove that his counsel's performance was deficient (i.e., that the counsel's performance fell below an objective standard of reasonableness) and that he was prejudiced by the deficient performance. Strickland, 466 U.S. at 687. Here, as part of his proof, Mr. Tuakalau must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59. He must also show that "a decision to reject the plea bargain would have been rational under the circumstances." Padilla v. Kentucky, 130 S. Ct. 1473, 1485 (2010).

Mr. Tuakalau claims that his counsel was ineffective because his trial lawyer was aware, but failed to inform him before he pleaded guilty, of the possibility that he could be charged under RICO for the same actions.[24] His claim rests on the assumption that his counsel had any knowledge of the possibility. But the evidence submitted by Mr. Tuakalau shows the opposite.

The Government did not communicate anything to Mr. Tuakalau's counsel, Sam Harkness, regarding the possibility of RICO charges. According to Mr. Harkness:

---

[24]In pleadings following the filing of his Petition, Mr. Tuakalau raised the new argument that his counsel was ineffective for failing to bring a motion to suppress Mr. Tuakalau's confessions. (See Reply Mem. at 18.) This claim is clearly barred by the statute of limitations under 28 U.S.C. § 2255(f), and the court will not consider it.

> Prior to [Mr. Tuakalau] entering into the plea agreement with the Government wherein Mr. Tuakalau pled guilty to several offenses and agreed to a thirty-year (30) sentence, the Government did not make me aware and I was not otherwise aware that the Government intended to file a RICO case against him and use the offenses resolved in case number 2:08-CR-00431 as predicate offenses. At no time during the plea negotiations of the case did the Government mention the possibility of additional charges.

(Aff. of Samuel E. Harkness ¶ 2.[25]) An attorney cannot be expected to communicate information to his client that was not communicated to him. There was no ineffective assistance of counsel.

**Alleged Breach of the Plea Agreement in '431 Case**

Mr. Tuakalau alternatively claims that the government breached the plea agreement by filing the RICO Indictment.

Mr. Tuakalau's October 8, 2010 Statement in Advance of Plea[26] is very general. It does not contain any representation by the Government that the agreement forecloses any and all future prosecutions of other crimes relating to the events charged in the indictment. The RICO charge is not a direct consequence of Mr. Tuakalau's plea. And, as noted above, nothing was communicated to Mr. Tuakalau's counsel, Sam Harkness regarding the possibility of RICO charges. Mr. Tuakalau had no information from the Government that would create any reasonable expectation that the plea would resolve anything other than what was charged in the '431 Case. Mr. Tuakalau admits the unremarkable fact that he entered into the plea agreement with the belief that "his guilty pleas, waiver of his appeals, and stipulation to spending thirty years in federal prison would fully and finally end the federal government's criminal prosecution

---

[25] Docket No. 20 in this case.

[26] Docket No. 65 in '431 Case.

of him <u>for the offenses at issue</u>." (Second Mem. Supp. Petition[27] at 6 (emphasis added).) The RICO conspiracy claim charged against him was not an "offense at issue" in the '431 Indictment. So Mr. Tuakalau got what he bargained for, nothing more, nothing less. There was no breach.

**Prejudice**

Even if Mr. Tuakalau could show that the Government breached the plea agreement or that his counsel was ineffective during plea negotiations, Mr. Tuakalau's claim fails on the merits because he has not shown any actionable prejudice resulting from the RICO Indictment. The RICO Indictment was dismissed against him with prejudice on May 17, 2012,[28] and the court confirmed its bench ruling in a June 5, 2012 written order.[29] The dismissal was one of the two remedies Mr. Tuakalau requested in his Petition. Yet he asserts that this case "involves unique and concrete prejudice which the Government has not accounted for [by its dismissal of the RICO charges] – the dangers Tuakalau faces upon returning to federal prison after his prolonged absence and the complete dismissal of the RICO case, and the stress, trauma and notoriety resulting from the RICO prosecution." (Reply at 20.)

He contends that such prejudice "is legally recognized and meaningful." (<u>Id.</u>) But the case law he cites to support his conclusion is not applicable. Those cases were decided in the context of the Speedy Trial Act and the double jeopardy clause. <u>See</u> <u>Barker v. Wingo</u>, 407 U.S. 514, 532-33 (1972) (Speedy Trial Act analysis); <u>Surfass v. United States</u>, 420 U.S. 377, 388 (1975) (double jeopardy analysis). Mr. Tuakalau does not cite to any case law saying such

---

[27] Docket No. 19 in this case.

[28] Docket No. 1443 in '758 Case.

[29] Docket No. 1444 in '758 Case.

prejudice is actionable under 28 U.S.C. § 2255.

Mr. Tuakalau does not challenge the Government's dismissal with prejudice of the RICO charges against him. Yet he wants his other requested remedy as well—the chance to go to trial on the sixteen counts in the '431 Case where he faced a potential minimum mandatory sentence of 185 years. Here, with or without a confession from Mr. Tuakalau on the sixteen counts of the '431 Case, his decision to reject the plea bargain then would not have been rational under the circumstances, a finding required by Padilla v. Kentucky, 130 S. Ct. 1473, 1485 (2010).

For the foregoing reasons, Mr. Tuakalau has not established the necessary prejudice prong under Strickland.

## ORDER

For the foregoing reasons, the court ORDERS as follows:

1. The court's January 26, 2012 Amended Order on § 2255 Petition (Docket No. 3) is hereby VACATED.

2. Petitioner John Tuakalau's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 is DENIED.

SO ORDERED this 19th day of October, 2012.

BY THE COURT:

*Tena Campbell*
TENA CAMPBELL
U.S. District Court Judge